**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-01410-CMA-CBS

RIVER NORTH PROPERTIES, LLC,

      Plaintiff,

v.

THE CITY AND COUNTY OF DENVER, and
MIKE ROACH, in his individual and official capacities,

      Defendants.

---

**ORDER REJECTING FEBRUARY 7, 2014 ORAL RECOMMENDATION OF UNITED
STATES MAGISTRATE JUDGE AND DISMISSING PLAINTIFF'S FEDERAL CLAIM
WITHOUT PREJUDICE**

---

This matter is before the Court on Defendants' Motion to Dismiss.  (Doc. # 7.)
The motion was referred to United States Magistrate Judge Craig B. Shaffer, who
issued an oral ruling on February 7, 2014, recommending that the Court grant
Defendants' motion.  (Doc. # 34.)  The Recommendation is incorporated herein by
reference.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

Judge Shaffer granted Defendants' Motion to Dismiss River North's federal claim
by reasoning that it was not ripe for review.  For the following reasons, this Court rejects
Judge Shaffer's reasoning as to the ripeness of River North's federal claim but
nevertheless grants Defendants' motion on an alternative ground and dismisses the
federal claim without prejudice.

## I.  <u>BACKGROUND</u>

This is a case about alleged municipal abuse of power.  The target of the purported abuse was a Denver real property owner, Plaintiff River North Properties, LLC ("River North"), which rents to a tenant[1] who grows medical marijuana at the property.  The alleged perpetrators are the two defendants: the City of Denver's Chief Building Official, Mike Roach, and the City itself (collectively, "Defendants").

If this Court is to believe the well-pleaded allegations contained in River North's complaint (Doc. # 3, hereinafter "Compl."), which it must for purposes of the instant motion to dismiss, Defendants have waged a multi-faceted campaign to thwart the work of River North and its tenant.  As alleged by River North, Defendants have attempted to achieve this result by: (1) selectively enforcing (and over-enforcing) Denver municipal codes against River North, and (2) changing and reinterpreting the complicated architecture of Denver's zoning laws, such that River North's property is effectively worthless to its tenant.

The complaint suggests that Defendants initially opted for the selective enforcement strategy and changed tacks in favor of the zoning-law approach.  The selective enforcement strategy involved, among other things, "needlessly conducting multiple inspections" at only River North's property (Compl., ¶ 18); making misleading or incorrect statements about the validity of city permits or the necessary steps for obtaining permits (*id.*, ¶¶ 25-32); improperly revoking permits (*id.*); improperly refusing

---

[1]  The tenant is not a party to this lawsuit and is not identified in the complaint or in any other record before this Court.

to issue permits or improperly requiring expensive changes to River North's property as a condition of issuing permits, (*id.*, ¶¶ 42-58); shutting off the power to River North's property without notice and under the pretext that River North had not complied with building code requirements, (*id.*, ¶¶ 68-69); and pressuring the Denver Fire Department to revoke a permit River North had obtained to use a generator to provide power to the property, (*id.*, ¶ 70-74).

River North's theory regarding Defendants' zoning-law strategy is more difficult to follow.  In short, according to the complaint, a recent change in zoning policy—which went into effect after River North had bought the real property in question—made changes to an older Denver zoning policy that applied certain classifications to both properties and the activities performed at those properties.  (*Id.*, ¶ 78.)  Under the more recent zoning policy, certain "new" activities are authorized at a newly classified property only if a new (and prohibitively expensive) certificate of occupancy is obtained. (*Id.*, ¶¶ 77-80.)  Defendant Roach apparently determines what constitutes a "new use" activity (*id.*, ¶ 78), though it is less clear if he exercises similar control over the classification of the buildings themselves.  In any case, Defendants apparently have determined that this new-certificate-of-occupancy policy applies to River North's building and to the marijuana-growing activities that its tenant seeks to conduct at the property, thereby resulting in immense costs to the tenant and a loss of value in the property for River North.  (*Id.*, ¶ 82).

As a result of the Defendants' actions, River North filed the instant lawsuit, alleging, as relevant here: (1) violations of its federal constitutional rights under "the

[C]ontract [C]lause, [and] the Fifth and Fourteenth Amendments to the United States Constitution (including the Due Process, Equal Protection and Takings [C]lauses therein)" (*Id.*, ¶ 89); (2) a Takings Clause claim under the Colorado State Constitution (*Id.*, ¶¶ 93-99); and (3) a claim under Colorado state law, which Counsel represents is an inverse condemnation claim. (*Id.*, ¶¶ 100-106; Doc. # 31, at 13)[2]

River North initially brought this action in state court, but Defendants sought to remove the case to federal court in light of River North's reliance on a federal cause of action. (Doc. # 1, at 2.) Shortly thereafter, Defendants filed the instant motion to dismiss, advancing a number of arguments as to why River North's claims failed. (Doc. # 7.)

## II. ANALYSIS

In his oral ruling, Judge Shaffer recommended that this Court dismiss River North's federal claim because it was not ripe for adjudication. He further recommended that this Court decline to exercise supplemental jurisdiction over the state law claims, as the only federal claim failed on ripeness grounds. Judge Shaffer therefore did not reach Defendants' alternative argument that the federal claim failed under Federal Rule of Civil Procedure 12(b)(6).

This Court does not concur in Judge Shaffer's reasoning but nevertheless dismisses the federal claim. First, this Court explains that it respectfully disagrees with

---

[2] Although River North initially pleaded a separate claim for attorney's fees under 42 U.S.C. § 1988, he withdrew this claim as a separate cause of action. (Doc. # 16, at 14 n.6.) River North also asks for declaratory relief in the form of a finding from this court that a new certificate of occupancy is not required for River North's tenant to use the building to grow marijuana. (*Id.*, ¶¶ 111-15.)

Judge Shaffer as to the ripeness of River North's federal claim because Defendants

waived the ripeness argument when they removed this case to federal court.  Second,

this Court enunciates why it nevertheless grants the motion to dismiss on the alternative

ground that, as currently presented, River North's federal claim does not survive the

Rule 12(b)(6) motion to dismiss.  The Court considers each of these matters in turn.

### A.  RIPENESS

#### 1.  Standard

##### a.  Supreme Court Precedent

First, this Court must consider the ripeness issue raised by Defendants and

considered by Judge Shaffer.  "Ripeness doctrine is invoked to determine whether

a dispute has yet matured to a point that warrants decision."  13B Charles Alan Wright,

*et al.*, Fed. Prac. & Proc. Juris. § 3532 (3d ed. Dec. 2013 update).  Determining whether

a case is ripe "turns on the fitness of the issues for judicial decision and the hardship to

the parties of withholding court consideration."  *Pac. Gas & Elec. Co. v. State Energy*

*Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) (internal quotation marks

omitted); *see also Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808

(2003) (reiterating this holding).

The instant motion to dismiss concerns in part whether River North's Fifth

Amendment Takings Clause claim is ripe for review.  As Judge Shaffer noted, the

Supreme Court addressed ripeness concerns in the context of a Takings Clause claim

in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*,

473 U.S. 172 (1985).  In that case, a plaintiff brought suit against a regional zoning

authority, claiming that a zoning decision effected a taking of property without just compensation.  *Id.* at 182.

Three aspects to the ripeness doctrine announced in *Williamson* are relevant here.  First, the *Williamson* Court established a two-pronged test for determining whether a federal Takings Clause claim is ripe.  In particular, the Court determined that the *Williamson* plaintiff's claim failed the ripeness test because: (1) the plaintiff "ha[d] not yet obtained a final decision regarding the application of the zoning ordinance and [relevant] regulations to its property," *id.* at 190, and (2) he had yet to seek "compensation [for the alleged taking] through the procedures the State ha[d] provided for doing so," *id.* at 194.  In other words, as the Supreme Court recently explained, the *Williamson* ripeness rule dictates that "a Fifth Amendment claim is premature until it is clear that the [g]overnment has both taken property *and* denied just compensation." *Horne v. Department of Agriculture*, 133 S. Ct. 2053, 2062 (2013) (emphasis in original).

Second, the *Williamson* Court held that the ripeness rule applies beyond the context of Takings Clause to claims that are predicated on a resolution of the Takings Clause claim itself.  In particular, the *Williamson* Court considered as "premature" (*id.* at 199), a separate claim under the Due Process Clause of the Fourteenth Amendment that the regulation in question was an invalid exercise of the police power.  As the Court reasoned, resolving the Due Process Clause question depended "in significant part, upon an analysis of the effect the Commission's application of the zoning ordinance and subdivision regulations had on the value of respondent's property," an effect that could not be "measured until a final decision is made as to how the regulations will be applied

to respondent's property." *Id.* at 200.  Thus, the Court declined to consider this related claim as it was also not ripe for review.  *Id.*[3]

Third, the Supreme Court has established that a federal court cannot rule on claims that fail the *Williamson* ripeness test because of the prudential, rather than constitutional or jurisdictional, limitations placed on the power of those courts.  In other words, although the ripeness doctrine can sometimes implicate questions related to a federal court's subject matter jurisdiction to hear a case (because the case is not ripe for purposes of Article III of the Constitution), the *Williamson* rule implicates **only** the prudential aspect of this doctrine.  *Cf. Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57 n.18 (1993) (noting that the ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction").

As discussed below, this is an important distinction in this case because, while federal courts "must raise and decide jurisdictional questions that the parties either overlook or elect not to press," *Henderson ex rel. Henderson v. Shinseki*, 131 S.Ct. 1197, 1202 (2011), for an argument implicating only prudential ripeness, this Court has greater discretion to proceed to the merits or deem such an argument waived or forfeited, *see Finstuen v. Crutcher*, 496 F.3d 1139, 1147 (10th Cir. 2007).

---

[3]  The Tenth Circuit has extended the same reasoning to bar as not ripe other constitutional claims predicated on a Takings Clause claim.  *See, e.g.*, *Bateman v. City of W. Bountiful*, 89 F.3d 704, 709 (10th Cir. 1996) (reasoning that an Equal Protection Claim was unripe because it "rest[s] upon the same facts as a concomitant [unripe] Takings Clause claim").

The Supreme Court first clarified that the *Williamson* ripeness rule is *only* prudential in *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), a Takings Clause case that concerned whether a state had effected a regulatory taking by passing a law that prevented a landowner from building homes on land he had purchased before the law was enacted.  *Id.* at 1010.  After briefing and argument in front of the state supreme court but before that court issued its opinion, the state legislature amended the relevant law in a way that allowed the landowner to apply for a special permit that provided an exemption from the law.  Despite the amendment, the state supreme court ruled on the merits of the Takings Clause claim.  At the Supreme Court, the state nevertheless argued that the amendment made the landowner's Takings Clause claim unripe under *Williamson* because the landowner had "not yet obtained a final decision regarding how [he] will be allowed to develop [his] property."  *Id.* at 1011 (quoting *Williamson*; all alterations in the original).

The Supreme Court rejected this argument.  As an initial matter, the Court reasoned that there was no Article III ripeness problem in considering the landowner's Takings Clause claim.  To the contrary, as the Court noted, the landowner had "properly alleged Article III injury in fact in this case," in the form of the "constraints placed on the use of his [land]."  *Id.* at 1012.  At the same time, the Court continued, "[t]hat there is a discretionary . . . procedure by which [the landowner] may regain—for the future, at least—beneficial use of his land **goes only to the prudential 'ripeness' of [his] challenge**."  *Id.* at 1012-13 (footnote omitted; emphasis added).

Next, the Court concluded that prudence did not counsel against deciding the landowner's Takings Clause claim.  In particular, the Court noted that the amendment only promised prospective relief to the landowner—*i.e.*, the possibility of gaining permission to start development on the land, upon acquiring the relevant special permit.  In light of this, the Court concluded that to endorse the state's position on ripeness might allow the landowner to pursue future construction on his property, but it would not remedy the fact that the pre-amendment law constituted—at the least— a temporary taking of his property which the amendment could not effectively remedy. Moreover, the Court noted that because the state supreme court's ruling broadly rejected the landowner's Takings Clause claim, it was unlikely that the landowner would be able to obtain further state-court relief, absent intervention from the Supreme Court. *Id.* at 1012.  The Court therefore addressed the merits of the landowner's Takings Clause claim and found in his favor.[4]

---

[4]  The Supreme Court has repeatedly reaffirmed the *Lucas* holding on prudential ripeness in numerous cases implicating the *Williamson* rule.  *See, e.g., Horne*, 133 S. Ct. at 2063 & n.6 (noting that for purposes of Article III of the Constitution, "[a] 'Case' or 'Controversy' exists once the government has taken private property without paying for it" and that "whether an alternative remedy exists does not affect the jurisdiction of the federal court"); *Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 733 & n.10 (2010) (noting that "the claim here is ripe insofar as Article III standing is concerned, since (accepting petitioner's version of Florida law as true) petitioner has been deprived of property" and that the *Williamson* argument had been waived in light of the respondent's failure to raise it in briefing before the Court); *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733-34 (1997) (describing the two-pronged *Williamson* test as presenting "two independent *prudential hurdles* to a regulatory Takings Clause claim brought against a state entity in federal court" (emphasis added)); *see also San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323, 349 (2005) (Rehnquist, C.J., concurring) (referring to *Williamson*'s ripeness rule "as merely a prudential requirement" (citing *Suitum*)).

*b. Tenth Circuit's Misinterpretation of the* Williamson *Rule*

While *Lucas* establishes that the *Williamson* rule is exclusively prudential, the Tenth Circuit has advanced interpretations of *Williamson* that are inconsistent with *Lucas* or otherwise obscure the difference between prudential ripeness and Article III ripeness.

As an initial matter, in several post-*Lucas* cases, the Tenth Circuit has failed to cite *Lucas*'s reasoning on prudential ripeness and has suggested that *Williamson* implicates *only* Article III ripeness concerns.  For example, in *Bateman v. City of W. Bountiful*, 89 F.3d 704 (10th Cir. 1996), the Tenth Circuit suggested that, in the context of a Takings Clause claim, "whether a claim is ripe for review bears on the court's subject matter jurisdiction under Article III of the Constitution."  *Id.* at 706. Similarly, in *Rocky Mountain Materials & Asphalt, Inc. v. Board of County Commissioners of El Paso County*, 972 F.2d 309 (10th Cir. 1992), the Tenth Circuit again failed to cite *Lucas* or discuss prudential ripeness and concluded that *Williamson* dictated that a claim "should have been dismissed for lack of jurisdiction on ripeness grounds."  *Id.* at 311.

Both *Bateman* and *Rocky Mountain Materials* are inconsistent with *Lucas*.  While the above-cited statement in *Bateman* about Article III ripeness is technically correct as a general matter, *Lucas* teaches that it is incorrect in the context presented in *Bateman*: namely, a ripeness argument relying on *Williamson*.  Further, the Supreme Court has established that prudential ripeness does not affect *subject matter jurisdiction*.  To the contrary, the Court may determine that prudence dictates it should not hear a claim, but

that does not mean the Court lacks *jurisdiction* under Article III of the Constitution to

consider the matter. *See, e.g.*, *Horne*, 133 S. Ct. at 2062 n.6 (noting that "whether

an alternative remedy [to pursue a Taking Clause claim] exists does not affect the

**jurisdiction** of the federal court" (emphasis added)); *see also Static Control*

*Components, Inc. v. Lexmark Int'l, Inc.*, -- S.Ct. --, No. 12-873, 2014 WL 1168967, at *6

(Mar. 25, 2014) ("Although Static Control's claim . . . presents a case or controversy that

is properly within federal courts' Article III jurisdiction, Lexmark urges that we should

decline to adjudicate Static Control's claim on grounds that are 'prudential,' rather than

constitutional."); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1154 (10th Cir.

2013) (Gorsuch, J., concurring) ("Prudential standing doctrines are not jurisdictional[.]"),

*cert. granted on other grounds*, 134 S. Ct. 678 (2013).

Moreover, although the Tenth Circuit has more recently held that the *Williamson*

rule is prudential, it has often failed to firmly establish that the rule is exclusively so and

continues to suggest that *Williamson* implicates Article III ripeness concerns. *Compare,*

*e.g.*, *Schanzenbach v. Town of La Barge*, 706 F.3d 1277, 1281 (10th Cir. 2013) (noting

that ripeness has Article III and prudential aspects but failing to discuss this matter in

the context of the *Williamson* rule and failing to cite any of the Supreme Court's cases

interpreting the *Williamson* rule as exclusively prudential); *Alto Eldorado P'ship v. Cnty.*

*of Santa Fe*, 634 F.3d 1170, 1179 (10th Cir. 2011) (noting that the plaintiffs emphasized

the prudential nature of the *Williamson* rule but "declin[ing] the [plaintiffs'] invitation to

ignore [*Williamson*'s] ripeness requirements"), *with B. Willis, C.P.A., Inc. v. BNSF Ry.*

*Corp.*, 531 F.3d 1282, 1300 n.20 (10th Cir. 2008) (recognizing in a footnote that the

*Williamson* rule implicates "only prudential concerns").

The Tenth Circuit's imprecise use of language on this issue has created a ripple

effect of district court rulings holding that the *Williamson* rule exclusively implicates

Article III ripeness and that applying the rule deprives a court of subject matter

jurisdiction. This problem derives principally from the fact that most district courts

seem to rely on *Bateman*, 89 F.3d at 706, for its unsound proposition about Article III

ripeness.[5]

To be sure, other courts' reliance on *Bateman* is understandable because the

Tenth Circuit has never called such cases into question. Further, such reliance might

not have made any difference in those cases, as they could have presented factual

scenarios more closely related to those in *Williamson* itself. At the same time, *Bateman*

contradicts clear and frequently reiterated precedent from the Supreme Court and is

therefore bad law.

Further, *Bateman* seems a good example of what the Supreme Court has termed

a "drive-by jurisdictional ruling"—i.e., a ruling in which a court concludes it lacks subject

---

[5] This Court has determined that cases relying on *Bateman* for such a proposition include the following: *Bd. of Comm'rs of Catron Cnty., N.M. v. United States*, 934 F. Supp. 2d 1298, 1309 (D.N.M. 2013); *Rau v. City of Garden Plain*, 76 F. Supp. 2d 1173, 1174 (D. Kan. 1999); *Marion Cnty. Landfill, Inc. v. Bd. of Cnty. Comm'rs of Marion Cnty., Kansas*, 211 F.R.D. 634, 639 (D. Kan. 2002); *Leonard H. Chanda & Associates, L.P. v. Meridian Metro. Dist.*, No. 09-CV-00014-WYD-MEH, 2009 WL 3158168, at *3 (D. Colo. Sept. 28, 2009); *Ashton Grove, L.C. v. City of Norman*, No. CIV-09-0467-F, 2009 WL 2230764, at *1 (W.D. Okla. July 22, 2009); *Redwood Prof'l Plaza, L.C. v. City of W. Jordan*, No. 1:07-CV-153-TC, 2009 WL 1408217, at *3 (D. Utah May 19, 2009); *Oddo Dev. Co., Inc. v. City of Leawood, Kansas*, No. 08-2616-JWL, 2009 WL 975139, at *3 (D. Kan. Apr. 9, 2009); *Barton v. City of Midwest City*, No. CIV-06-0179-HE, 2006 WL 2520260, at *2 (W.D. Okla. Aug. 29, 2006).

matter jurisdiction to consider a claim, without much analysis as to why this is the case or whether the claim fails for some other reason. *See, e.g.*, *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 161 (2010). Most "drive-by jurisdictional" rulings miss the important distinction between jurisdictional conditions required to proceed with a cause of action and mere claim-processing rules that could be elements of that same cause of action. Whereas jurisdictional rules can be raised at any time in the proceedings, non-jurisdictional rules can be waived if not raised. *Id. Bateman* is like other drive-by jurisdictional rulings because it fails to even *consider* that what drives the rule in *Williamson* has nothing to do with any jurisdictional or constitutional limitation on the judiciary's power.[6]

The Supreme Court and the Tenth Circuit have instructed that drive-by jurisdictional rulings are devoid of precedential effect, regardless of whether they have been explicitly abrogated by later precedent. *See, e.g.*, *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 161 (2010); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d at 1159 (Gorsuch, J., concurring) (noting that courts can disregard prior opinions, even from the Tenth Circuit, that invoke the term "jurisdictional" with little or no analysis because they are "exactly the sort of 'drive-by jurisdictional rulings' the [Supreme] Court tells us to view with a jaundiced eye"), *cert. granted on other grounds*, 134 S. Ct. 678 (2013). Thus, even if this Court could not rely on *Lucas* and its progeny in establishing that

---

[6] There is one distinction—not relevant here—between most so-called "claims processing" rules and the rules governing prudential ripeness. Whereas arguments related to the former may be forfeited on appeal and cannot be considered if not raised at the appropriate time, *see, e.g.*, *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 784 (10th Cir. 2013), a federal court retains the ability to *sua sponte* raise and address prudential standing concerns, regardless of when or even if a party has raised such concerns, *see, e.g.*, *Adams ex rel. D.J.W. v. Astrue,* 659 F.3d 1297, 1299-1301 (10th Cir. 2011).

*Bateman* and *Rocky Mountain Materials* are no longer good law, it could disregard such holdings on the alternative grounds enunciated in such cases as *Reed Elsevier*.

## 2. Application

Judge Shaffer fell into the trap of many other district courts in this circuit by relying on *Bateman* and *Rocky Mountain Materials* for the proposition that the *Williamson* ripeness rule implicates only this Court's subject matter jurisdiction. *See, e.g.*, (Doc. # 34, at 7 (Judge Shaffer noting that his analysis of "subject matter jurisdiction" in the instant case touches upon the question of whether "the Constitution and Congress have granted the court's authority to hear" the case); *id.* at 8-12 (citing *Bateman* and *Rocky Mountain Materials*). He further reasoned that River North's other claims, including the Procedural Due Process Claim and the Equal Protection, were predicated on resolution of the unripe Takings Clause claim and therefore unripe for the same reason. (*Id.* at 13-15.)

Judge Shaffer therefore concluded that this Court lacked subject matter jurisdiction to consider River North's Takings Clause claim until it had pursued state law procedures to obtain compensation for the alleged taking. In particular, Judge Shaffer suggested that the federal claim would not be ripe until River North had brought an inverse condemnation claim in state court (*id.* at 10)—a claim that, as noted on pages 3-4, *supra*, River North had included in the complaint originally filed in state court.

This Court rejects this aspect of Judge Shaffer's recommendation. For the reasons detailed above, Judge Shaffer's reliance on cases like *Bateman* was misplaced because the *Williamson* ripeness rule is exclusively prudential. Further, River North has

14

satisfied the case or controversy requirement for Article III of the Constitution by alleging

a past and ongoing devaluation of its property because of the Defendants' acts.[7]

Accordingly, this Court has subject matter jurisdiction to hear the federal claim.

The only question that remains is whether, for prudential reasons, this Court

should decline to consider River North's claims.  As to this question, what is dispositive

for this Court is that *Defendants* removed this case to federal court and now seek to

undermine the federal claim by somewhat paradoxically suggesting that River North

should have proceeded with it in state court.

This Court will not grant Defendants the benefit of the *Williamson* rule through

such a strategy.  Rather, this Court endorses the view articulated in *Sansotta v. Town of*

*Nags Head*, 724 F.3d 533 (4th Cir. 2013), where the Fourth Circuit held that under such

circumstances, "allowing [a municipal defendant] to invoke the *Williamson* . . . state-

litigation requirement after removing the case to federal court would fail to fulfill the

rationale for this prudential rule and would create the possibility for judicially condoned

manipulation of litigation."  *Id.* at 545.

Below, this Court discusses *Sansotta* in relevant part and supplies additional

reasoning to support the soundness of the Fourth Circuit's position.

As an initial matter, *Sansotta* presents a fact pattern similar to the instant case in

that *Sansotta* also involved a Takings Clause claim originally brought in state court and

---

[7]  In scattered portions of Defendants' motion to dismiss, they suggest that River North lacks standing because the harm alleged is abstract (Doc. # 7 at 5), or that the claim should be dismissed "for lack of personal involvement, causation, and standing; because River North is not the real party in interest." (*Id.* at 3.)  These arguments all fail because most are conclusory, some misstate the law, and all ignore the River North's allegations that the property it owns has been devalued as a result of the Defendants' acts.

then removed to federal court by state defendants.  Like Defendants here, the defendants in *Sansotta* then tried to undermine the federal claim by invoking the *Williamson* rule.  *Id.* at 536.

The *Sansotta* court rejected this argument.  First, the court noted that in contrast to a federal court, a state court may "hear 'simultaneously a plaintiff's request for compensation under state law and the claim that, in the alternative, the denial of compensation would violate the Fifth Amendment of the Federal Constitution.'"  *Id.* at 544 (quoting *San Remo Hotel, L.P. v. City & Cnty. of San Francisco, Cal.,* 545 U.S. 323, 346 (2005).  Further, the *Sansotta* court reasoned that while a state court maintains the ability to simultaneously hear both claims at once, the *Williamson* rule dictates that federal courts do not enjoy this same privilege because "state courts undoubtedly have more experience than federal courts do in resolving the complex factual, technical, and legal questions related to zoning and land-use regulations."  *Id.* at 545 (quoting *San Remo*, 545 U.S. at 347).

At the same time, continued the *Sansotta* court, "[t]hat state courts have this advantage over federal courts in experience with these issues . . . does not mean that federal courts are incapable of handling them."  *Id.*  For this proposition, the *Sansotta* court cited Chief Justice Rehnquist's concurrence in *San Remo*, in which he observed that federal courts can hear First Amendment challenges to municipal land-use

regulations despite state courts' greater familiarity with such ordinances. *Id.* (citing *San Remo*, 545 U.S. at 350–51 (Rehnquist, C.J., concurring in the judgment).[8]

In light of these observations, the *Sansotta* court concluded that, in accord with *San Remo*, a state defendant "implicitly agrees" with the conclusion that federal courts are sufficiently equipped to hear claims touching upon municipal land use matters when that defendant removes a case involving such a state or municipal law to federal court. In other words, because the *Williamson* rule is grounded in such federalism concerns, the rationale precluding federal review of a Takings Clause claim evaporates when a local municipal authority decides that, rather than relying on state judicial expertise, it would prefer to obtain assessment from a federal court. *Id.*

The *Sansotta* court also reasoned that its exception to the *Williamson* rule was in accord with other Supreme Court precedents that prevented state entities from using litigation tactics to avoid a decision on the merits of a claim. For this proposition the *Sansotta* court relied on *Lapides v. Board of Regents of the University System of Georgia,* 535 U.S. 613 (2002). In *Lapides*, a university professor brought an action pursuant to 42 U.S.C. § 1983, along with state-law claims, in state court after university officials put allegations of sexual harassment in his personnel file. *Id.* at 616. The defendants then removed the case to federal court and asserted Eleventh Amendment immunity. *Id.*

---

[8] Other commentators have noted that this principle extends well beyond the context of First Amendment municipal land-use challenges. *See, e.g.*, Michael W. McConnell, *Horne and the Normalization of Takings Litigation: A Response to Professor Echeverria,* 43 Envtl. L. Rep. News & Analysis 10749, 10751 (2013) (noting that federal courts also rely on local knowledge in other circumstances, such as for "First Amendment claims brought by municipal employees when they are disciplined for speaking out in ways that may or may not be relevant to their jobs and claims of 'exigent circumstances' for warrantless searches").

The Supreme Court rejected the Eleventh Amendment defense.  Considering such a claim, the *Lapides* Court reasoned that it would be "anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand."  *Lapides*, 535 U.S. at 619.  Thus, the *Lapides* Court concluded that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum."  *Id.* at 624.[9]

Having reviewed the posture of *Lapides*, the *Sansotta* court applied the principles of that case to the *Williamson* rule and decided that the exception to the rule it advanced was "both logically and legally sound," for the following reasons:

> First, this reasoning does nothing to undermine the core rationale of *Williamson* . . . , as a plaintiff cannot bring a takings claim in federal court without having been denied just compensation by the state; such a claim can come into federal court before the state has denied compensation only when the state or its political subdivision chooses to remove the case to federal court.  Second, it protects an innocent plaintiff who sought to comply with *Williamson* . . .  and *San Remo Hotel* but whose efforts were thwarted by the state or political subdivision's decision to remove the case. Third, it prevents a state or its political subdivision from manipulating litigation by removing to federal court claims properly filed in state court in accordance with *San Remo Hotel* and then claiming that the plaintiff cannot proceed on those claims, thereby denying a plaintiff *any* forum for having his claim heard.  Fourth, and relatedly, it furthers our 'strong preference for deciding cases on the merits' by preventing any procedural

---

[9]  The Tenth Circuit has in fact broadly interpreted *Lapides* to stand for the proposition that "when a State removes federal-law claims from state court to federal court that it 'submits its rights for judicial determination,' and unequivocally invokes the jurisdiction of the federal courts." *Estes v. Wyoming Dep't of Transp.*, 302 F.3d 1200, 1206 (10th Cir. 2002) (quoting *Gunter v. Atl. Coast Line R. Co.*, 200 U.S. 273, 284 (1906)).

gamesmanship.  *Heyman v. M.L. Mktg. Co.,* 116 F.3d 91, 94 (4th Cir. 1997).

*Sansotta*, 724 F.3d at 546-47.

As applied to the instant case, this Court endorses the excellent analysis from the Fourth Circuit in full.  This Court adds to this analysis the observation that the Fourth Circuit's exception to the *Williamson* ripeness rule is also in keeping with the underlying rationale for the ripeness doctrine, which, as noted above, turns in part on "the hardship to the parties of withholding court consideration."  *Pac. Gas & Elec. Co.*, 461 U.S. at 201.  The *Lucas* Court vindicated this hardship concern by noting it was probable that a remand to state court to address the ripeness issue would have delayed what was going to become a necessary intervention by the Supreme Court to ultimately decide the merits of the landowner's constitutional claim.  And yet this intervention was necessitated by a discretionary decision made by a state actor—in particular, in *Lucas*, the state supreme court addressed the merits of the constitutional claim despite having the option of requiring the landowner to petition for the aforementioned special permit. *Lucas*, 505 U.S. at 1012-13 & n.5.

The same hardship concern seems at least relevant here.  Indeed, if this Court were to require River North to switch forums for a second time, River North would have to submit to another round of filing fees, conform again to a different set of procedural rules, and experience further delay in resolution of its case—all because of a discretionary decision made by state actors.

Thus, for the reasons stated above, prudence does not dictate that River North's federal Takings Clause claim must first proceed in state court.  River North can proceed

with both the state law and federal claims in this Court, just as it would have done if

Defendants had not decided to remove the case to federal court.  Further, because the

Takings Clause claim can proceed on a parallel track with the inverse condemnation

claim, so too can the other constitutional claims that Judge Shaffer viewed as

connected to the Takings Clause claim.[10]

### B.  FAILURE TO STATE A CLAIM

While this Court concludes that the federal claim is ripe for review, that is not the

end of the matter.  As the Supreme Court established in *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the claim also must

be sufficiently pleaded under Federal Rule of Civil Procedure 8(a)(2) to survive a Rule

12(b)(6) motion to dismiss for failure to state a claim.  For the following reasons, this

Court concludes that the case does not survive the strictures of the *Iqbal/Twombly* rule.

### 1.  Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short

and plain statement of the claim showing that the pleader is entitled to relief."  "The

pleading standard Rule 8 announces does not require detailed factual allegations, but

it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.

---

[10]  River North suggested that it would withdraw its "Takings Clause" claim based on
Defendants' ripeness argument.  (Doc. # 14 at 6).  As noted above, it nevertheless maintained
what Judge Shaffer construed as related claims under the Due Process and Equal Protection
Clauses.  As is explained further below, this Court is dismissing River North's federal claim
essentially because of the confusing manner in which it was presented.  To the extent it is
permissible under this Court's procedural rules, River North can reconsider whether it wishes
to advance the Takings Clause claim in an amended complaint.  Further, if River North wishes
to advance constitutional claims that are not connected to the Takings claim, it must do so
explicitly in an amended complaint.

A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting and citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted; alterations incorporated)).

Further, "only a complaint that states a plausible claim for relief survives a motion to dismiss [under Rule 12(b)(6)].  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal citations and quotation marks omitted; alterations incorporated).

The purpose of this pleading requirement is two-fold: "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (internal quotation marks and citations omitted).

2. Application

The federal claim does not survive the above-enunciated standard principally because it does not provide sufficient notice to the Court or Defendants as to why River North thinks that its constitutional rights were violated.  The problem stems largely from the manner in which River North has presented its claims.  The complaint contains a

long and complicated narrative fact pattern—reminiscent of a law-school issue-spotter—

in which various constitutional violations are suggested or insinuated.  This fact pattern

ends with a relatively short and vague articulation of alleged constitutional violations,

which are contained entirely within Claim I of the complaint.  In full, Claim I states as

follows:

> The Defendants acted under color of state law to deprive Plaintiff of its
> constitutionally protected rights under the United States Constitution,
> including, but not limited to, the ex post facto clause[11], the [C]ontract
> [C]lause, the Fifth and Fourteenth Amendments to the United States
> Constitution (including the Due Process, Equal Protection and Takings
> clauses  therein) by, including, but not limited to, the following:
>
>> a.  Depriving Plaintiff of equal protection of the laws in a manner
>> and for a purpose that was not rationally related to any legitimate
>> state interest;
>>
>> b.  Depriving Plaintiff of its liberty and property, including but not
>> limited to its vested property rights, without due process;
>>
>> c.  Taking Plaintiff's property, by, including but not limited to,
>> taking away its vested property rights, prohibiting all reasonable
>> use of the Property, preventing  economically viable use of the
>> Property, physically interfering with the Property,  all without just
>> compensation;
>>
>> d.  Adopting a new policy targeted at Plaintiff and applying that
>> policy retroactively to take away Plaintiff's legal and property rights;

---

[11]  This claim has since been withdrawn.  (Doc. # 16 at 14 n.6)

> e.  Preventing the legal use of the Property and thereby preventing Plaintiff from contracting with others to rent the Property and causing Plaintiff's tenant to be unable to perform its lease agreement with Plaintiff.

(Doc. # 3, ¶ 89.)

This claim, as presented, is inadequate for purposes of Rule 8.  Indeed, the claim hardly even provides a simple "formulaic recitation of the elements of a cause of action" but rather advances a laundry list of alleged violations that include "but [are] not limited to" what this Court counts as four remaining infringements of constitutional rights. *Cf. Allen v. Briggs*, No. CIV-08-334-FHS, 2009 WL 756213, at *1 (Mar. 18, 2009) (disapproving of the laundry list approach and concluding that it does not pass muster under Rule 8), *aff'd*, 331 F. App'x 603 (10th Cir. 2009).  What specific acts caused River North to be deprived of property and liberty interests?  What are these interests?  What are the "legal rights" that have been lost?  The Court and Defendants are both left in the dark as to these and many more questions.

The main problem with the manner in which the constitutional claim is currently presented is that River North seems to be operating under the erroneous assumption that all claims brought under 42 U.S.C. § 1983 must be presented in one single cause of action.  To the contrary, while each separate constitutional violation might be brought pursuant to that statute, there is no principle or rule dictating that a complaint cannot allege multiple *separate* allegations of constitutional violations in different causes of action in the same complaint.  In fact, if River North wishes to amend its complaint, this Court directs it to set out its allegations of constitutional violations as separate causes of action.

Further, beyond clarifying and simplifying the narrative portion of the complaint, if it seeks to amend, River North must link the specific factual elements from the narrative portion of the complaint to the specific alleged violation of constitutional rights, so as to allow both Defendants and this Court to better assess the viability of each claim.  For example, this Court cannot determine whether River North's Procedural Due Process theory is solely related to the complicated zoning issue described in the complaint or whether River North believes these rights were (also) violated in some other way. Yet explicitly enunciating the precise Procedural Due Process theory (or theories) could have an effect on the manner in which this Court reviews such a claim (or claims). *Cf. Schanzenbach*, 706 F.3d at 1283 (10th Cir. 2013) (noting that a procedural-due-process claim related to the denial of permits to improve property "is factually and conceptually distinct from [a] takings claim" that implicated zoning changes affecting the same property).

This same critique applies to River North's claims under the Takings Clause, the Contracts Clause, the Equal Protection Clause, and to the *Monell* theory of liability. If River North wishes to pursue any of these claims in this Court, it must do a better job supplying reasoning for why it thinks the alleged conduct of Defendants led to these violations.[12]

---

[12]  Finally, if River North presents a valid federal claim, this Court could exercise supplemental jurisdiction over River North's state-law claims.  At the same time, these claims appear of a barebones variety and might not survive a renewed motion to dismiss an amended complaint. In particular, Defendants have alleged a number of defects in these state law theories in their motion to dismiss—River North should take these into consideration if it seeks to amend its complaint.  The Court withholds ruling on these matters pending amendment of River North's federal claim.

To be sure, when more fully explained, several (or perhaps all) of these constitutional theories could still fail to pass muster against a renewed motion to dismiss or on a motion for summary judgment. But at this point, the Court is left in such doubt as to how to interpret the claims that to engage in an analysis of their merits would be a waste of time.

### III.  <u>CONCLUSION</u>

Accordingly, it is hereby ORDERED that the oral recommendation of United States Magistrate Judge Schaffer (Doc. # 34) is REJECTED.  It is

FURTHER ORDERED that Defendant's Motion to Dismiss is GRANTED as to Count I of the complaint.  This claim is DISMISSED WITHOUT PREJUDICE.  River North has twenty-one days to file an amended complaint addressing the above-identified deficiencies in the original complaint.

DATED:  March 26, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge