**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-01410-CMA-CBS

RIVER NORTH PROPERTIES, LLC,

      Plaintiff,

v.

THE CITY AND COUNTY OF DENVER, and
MIKE ROACH, in his individual and official capacities,

      Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

---

In March of 2014, this Court granted Defendants' Motion to Dismiss (as to Plaintiff's federal claims), but permitted Plaintiff to amend its Complaint to address the deficiencies the Court outlined in its Order.  (Doc. # 35.)  Plaintiff filed an Amended Complaint in April of 2014, and this matter is now before the Court on Defendants' Motion to Dismiss the Amended Complaint.  (Doc. # 45.)  For the reasons described below, Plaintiff's Amended Complaint fails to state a federal claim, and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, the Defendants' Motion to Dismiss is granted, and the instant case is dismissed with prejudice.

## I.  BACKGROUND

This case's somewhat lengthy factual background is provided in this Court's prior order granting Defendants' (first) Motion to Dismiss (Doc. # 35), and it will not be reiterated in full here.  However, some basic factual context is necessary for resolution of the instant Motion.

Plaintiff, River North Properties, LLC ("River North"), owns two parcels of real property located on North Brighton Boulevard in Denver, Colorado ("the Property"). River North alleges that the City of Denver's Chief Building Official, Mike Roach, and the City itself (collectively, "Defendants"), have utilized various regulatory processes to improperly prevent River North from using the Property for commercial purposes that are consistent (in its view) with Denver's zoning laws and municipal codes, i.e., leasing the Property to a tenant who grows medical marijuana.

Specifically, Plaintiff's Amended Complaint alleges seven claims, including four 42 U.S.C. § 1983 claims (for violations of procedural due process, equal protection, the Contract Clause, and the takings clause), and three state law claims (a takings claim brought under the Colorado constitution, a claim for a declaratory judgment, and a claim for a violation of a Colorado state statute (Colo. Rev. Stat. § 38-1-101)).  (Doc. # 39.)

## II.  ANALYSIS

### A.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed due to the plaintiff's "failure to state a claim upon which relief can be granted."  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

absence of sufficient facts alleged under a cognizable legal theory.  *See id.*; *see also Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004).  The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

Additionally, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting and citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted; alterations incorporated)).

Further, "only a complaint that states a plausible claim for relief survives a motion to dismiss [under Rule 12(b)(6)].  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id*. at 679 (quotation marks omitted).

The purpose of this pleading requirement is two-fold: "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate

defense, and to avoid ginning up the costly machinery associated with our civil

discovery regime on the basis of a largely groundless claim." *Kan. Penn Gaming, LLC*

*v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (internal quotation marks omitted).

## B.  Application

Plaintiff's federal claims do not survive the above-enunciated standard principally

because Plaintiff has failed to state a cognizable claim of a constitutionally protected

interest under 42 U.S.C. § 1983 ("Section 1983").  Plaintiff argues that "[t]he fact that

federal law does not recognize the right to grow medical marijuana is irrelevant,"

because the Medical Marijuana Amendment of the Colorado Constitution, *see* Colo.

Const., art. XVIII, sect. 14, "created and granted that right."  (Doc. # 49 at 5-6.)

Plaintiff's argument, however, is too clever by half.  To successfully state a claim under

Section 1983, a plaintiff must allege the violation of an interest which is not merely

created by state law, but **also protected by federal law** – i.e., the federal Constitution

and laws of the United States.  *Cook v. Baca*, 512 F. App'x 810, 821 (10th Cir. 2013)

(quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)); *see also Gonzaga Univ. v. Doe*, 536

U.S. 273, 283 (2002) ("Section 1983 provides a remedy only for the deprivation of

'rights, privileges, or immunities secured by the Constitution and laws' of the United

States"); *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent [a

plaintiff] seeks relief for alleged violations of state statutes [alone] . . . he has stated no

cognizable claim under § 1983.")

As explained in greater detail below, Plaintiff's federal claims rest – at bottom –

on its loss of benefits from a lease with a tenant who grew medical marijuana, and

federal law does not recognize any right related to the cultivation of marijuana.  By definition, then, Plaintiff cannot state a claim of a federally protected right for purposes of Section 1983.

### 1.  Plaintiff's Procedural Due Process Claim

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  There are two types of claims that arise under the Due Process Clause, procedural due process and substantive due process. The Tenth Circuit has explained the difference between the two types of claims as follows:  "[p]rocedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).  At the outset, the Court notes that Plaintiff has failed to distinguish between the two types of constitutional due process claims; however, the Complaint alleges a procedural due process claim, because it focuses on the alleged failures of Defendant to provide procedures "necessary process before or after it deprived Plaintiff of its vested property rights."  (Doc. # 39 at ¶ 101.)

"To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the

individual afforded an appropriate level of process." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004).

In its Complaint, Plaintiff identifies a variety of putative property interests. *See* (Doc. # 39 at ¶ 99).  However, all of these purported property interests – at their core – relate to Plaintiff's ability to lease the Property to a tenant who cultivates medical marijuana. *Id.* (listing as "vested property rights": (1) a zoning classification, Certificate of Occupancy, and building classification which permitted the cultivation of medical marijuana; (2) a lease with a tenant who grows medical marijuana; and (3) a generator permit which would allow it to provide electricity in the building, which was required for the cultivation of medical marijuana.)

Federal law determines whether a particular interest rises to the level of a "legitimate claim of entitlement" protected by the Due Process Clause. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978).  Additionally, the Supremacy Clause unambiguously provides that, if there is any conflict between federal and state law, federal law prevails. *Gonzales v. Raich*, 545 U.S. 1, 29 (2005).  Accordingly, although the Medical Marijuana Amendment of the Colorado Constitution permits the cultivation of medical marijuana in particular circumstances, *see* Colo. Const., art. XVIII, section 14, under the federal Controlled Substances Act ("CSA"), it is illegal for any private person to possess marijuana for **any** purpose.  21 U.S.C. §§ 812(c), 841(a)(1), 844(a); *see also Raich*, 545 U.S. at 27; *Beinor v. Indus. Claim Appeals Office*, 262 P.3d 970, 977 (Colo. App. 2011) ("Although Colorado's medical marijuana provision may protect

[a] claimant from prosecution under Colorado's criminal laws . . . [it] has no bearing on federal laws, under which marijuana remains an illegal substance.")

Because marijuana is contraband *per se* under federal law, Plaintiff lacked a cognizable property interest in its cultivation under Section 1983. *See* 21 U.S.C.A. § 881(a)(8) (emphasis added) ("The following shall be subject to forfeiture to the United States **and no property right shall exist in them**: . . . All controlled substances which have been possessed in violation of this subchapter"); *accord Young v. Larimer Cnty. Sheriff's Office*, 2014 COA 119, ¶ 14 (holding that, notwithstanding the medical marijuana provisions of the Colorado constitution, a plaintiff could not seek relief under section 1983 for state's destruction of marijuana plants "because that destruction did not impair a federal right"); *Barrios v. Cnty. of Tulare*, No. 1:13-CV-1665, 2014 WL 2174746, at *5 (E.D. Cal. May 23, 2014) ("Because marijuana is contraband under federal law, [plaintiff] had no property interest in the marijuana that was protected by the Fourteenth Amendment due process clause"); *Staffin v. County of Shasta*, No. 2:13–cv–00315, 2013 WL 1896812, at *3 (E.D. Cal. May 6, 2013) (same)*; Schmidt v. Cnty. of Nev.*, No. 2:10–CV–3022, 2011 WL 2967786, at *6 (E.D. Cal. July 19, 2011) (same).

Accordingly, because Plaintiff has failed to state a constitutionally protected interest under the due process clause, Plaintiff's due process claim fails as a matter of law.

### 2.  Plaintiff's Takings Claim

Plaintiff argues that Defendants took and damaged the Property in violation of the Fifth Amendment.  The Fifth Amendment, applied to the states through the

Fourteenth Amendment, prohibits takings of property absent just compensation from the state. *J.B. Ranch, Inc. v. Grand Cnty.*, 958 F.2d 306, 308 (10th Cir. 1992); U.S. Const., amd. V.  A successful takings claim may result not only from the physical appropriation or invasion of property by the state, but also from regulatory actions that deny all economically beneficial uses of land, *see Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1018 (1992), or regulatory actions that go "too far" in destroying the value of property, *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 199 (1985).

Regardless of the particular "takings" theory involved, however, the threshold inquiry in analyzing any takings claim is whether Plaintiff has identified a cognizable property interest for which the state must pay just compensation. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1000-01 (1984); *see also Branch v. United States*, 69 F.3d 1571, 1575 (Fed. Cir. 1995) ("In analyzing a takings claim, a court must first determine what was taken.")  Here, River North alleges that Defendants' regulatory actions – in retroactively and selectively applying Denver's building and zoning codes – "caused [its medical-marijuana-cultivating tenant] to vacate the premises and precluded Plaintiff from leasing the Property to another or using the property," and "achieved the Defendants' goal of **destroying the value** of the Property and **rendering it unusable**." (Doc. # 39 at ¶¶ 130, 133) (emphasis added).  Plaintiff also asserts, without factual support, that "Defendants' actions were taken so that the Defendants could obtain Plaintiff's property for a park without paying just compensation."  (Doc. # 39 at ¶ 135.)

Although the Complaint does explicitly limit its takings allegations to Plaintiff's purported interest in leasing the Property to a tenant who grows medical marijuana, as explained below, River North does not provide sufficient factual support for its allegations that Defendants thwarted any Property interests which were unrelated to this narrow interest.  Thus, in all relevant respects, Plaintiff's only purported property interest which survives the Court's Rule 12(b)(6) inquiry – i.e., the interest in rent payments from a tenant who grows medical marijuana – is the same one implicated by its due process claim.  However, as the Court has ruled with regard to Plaintiff's due process claim, there is no constitutionally protected property interest to grow medical marijuana (nor a concomitant interest to lease to a tenant who grows medical marijuana).  (*See supra* at 6-7.)  As such, River North's takings claim, alleging a taking resulting from the loss of its medical-marijuana-growing tenant, also fails as a matter of law.

Even independent of its failure to show a protected property interest, Plaintiff's formulaic recitations of the elements of a takings claim are "naked assertions devoid of further factual enhancement" which are plainly inadequate in the post-*Iqbal* landscape. *See Iqbal*, 556 U.S. at 677-78.  River North argues that the allegations in its Complaint are "much broader than growing medical marijuana" (Doc. # 49 at 6), and the Complaint itself alleges that the Defendants' actions "prohibited all reasonable use of the Property, prevented economically viable use of the Property, [and] prevented the legal use of the Property" (Doc. # 39 at ¶ 134.)  However, the Complaint's conclusory allegations, devoid of factual support, do not allow the Court to reasonably infer that River North actually sustained such losses.

Specifically, River North fails to demonstrate that Defendants' past actions with regard to the Property and the loss of its **past tenant** were significant enough to constitute a "taking."  It is axiomatic that the exercise of the police power in land regulation may adversely affect recognized real property interests, and that "diminution in property value, standing alone," cannot establish a "taking."  *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 125, 131 (1978).  Although the Complaint sufficiently alleges that its tenant was not able to operate a medical marijuana cultivation facility without first obtaining required permits and certificates of occupancy, it provides no factual support indicating that it attempted, but was unable, to (1) lease the Property to other tenants for other purposes; (2) apply for other uses of the property; (3) sell the property; or (4) occupy the Property, due to Defendants' regulatory actions or requirements.[1]  In other words, River North offers only labels, conclusions, and a formulaic recitation of the elements of the elements of a takings claim, without factual substantiation of those elements.  *See Iqbal*, 556 U.S. at 677-78.  Similarly, although River North repeatedly alleges that Defendant's explanations for its regulatory behavior were pretextual and designed to hide its true motivation to destroy the Property's value in order to build a park, it never provides factual support for this assertion.  Indeed, Defendants' actions are "not only compatible with, but indeed [are] more likely explained by [the] lawful" exercise of its police powers.  *See id.* at 680.

---

[1] Plaintiff claims that even if it "cannot assert a claim under Section 1983 based on the vested right to grow medical marijuana, it may assert a claim under Section 1983 for illegally shutting off the power to the building."  (Doc. # 49 at 6.)  However, Plaintiff fails to allege that it sought restoration of power – for any purpose – after the shut-off.  Additionally, the temporary shut-off of power is insufficient as a matter of law to render the Property valueless for the purposes of a categorical taking.  *See Penn Cent. Transp. Co.*, 438 U.S. at 125, 131.

Accordingly, because Plaintiff has failed to allege a cognizable property interest to grow medical marijuana, and because its remaining claims lack factual support sufficient to nudge them "across the line from conceivable to plausible," *id.*, Plaintiff's Fifth Amendment takings claim is dismissed with prejudice.

### 3. Plaintiff's Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amdt. 14, § 1. This is "essentially a direction that all similarly situated persons should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 437 U.S. 432, 439 (1985).

Plaintiff's equal protection claim alleges that Defendant treated Plaintiff differently than "other materially identical building owners" by, for example, "requiring Plaintiff to obtain a new [Certificate of Occupancy] and bring the entire building up to the standards of the new code in order to grow medical marijuana" when other buildings were not subject to the same requirements, or by reclassifying other buildings "and permitting plant husbandry at those buildings while refusing to reclassify Plaintiff's . . . building." (Doc. # 39 at ¶ 109.)  Additionally, Plaintiff alleges that Defendants' differential treatment was without a rational basis.  (Id. at ¶ 110.)  Accordingly, Plaintiff is proceeding on a "class-of-one" theory recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  To prevail on this theory in the Tenth Circuit, a plaintiff has a "substantial burden" to demonstrate that others, "similarly situated in **all material respects**," were treated differently by state actors.  *Kan. Penn*

*Gaming, LLC v. Collins*, 656 F.3d 1210, 1217 (10th Cir. 2011) (emphasis added) (citing *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1210 (10th Cir. 2006)).  A plaintiff must then show this difference in treatment was without rational basis, that is, the government action was objectively "irrational and abusive," *id.* at 1211, and "wholly unrelated to any legitimate state activity," *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005) (quotation omitted); *Jicarilla Apache Nation*, 440 F.3d at 1211.

Here, Plaintiff's "class-of-one" equal protection claim fails for a variety of reasons. First, River North fails to allege facts which would allow the Court to conclude that it is entitled to relief.  Specifically, it fails to support its conclusory allegation that other property owners were similarly situated.  Of course, in a very important respect, Plaintiff was **not** similarly situated to most "other building owners" – Plaintiff's tenant was cultivating marijuana, rather than conducting other forms of legal business.  This obvious difference serves to underscore the inadequacy of Plaintiff's generalized allegations as to the treatment of "other building owners" or "other buildings" by Defendants.  River North not only fails to delineate the scope of its purportedly "similarly situated" category (i.e., it does not specify whether this category includes buildings involving plant husbandry activities, marijuana cultivation, etc.), it also fails to identify a single specific "other building owner" or "other building," much less an instance in which Defendants acted differently toward these "other building owners" or "other buildings." *See Glover v. Mabrey*, 384 F. App'x 763, 778 (10th Cir. 2010) (dismissing a class-of-one claim because the Plaintiff "failed to allege, as it must, the identity or characteristics of other, similarly situated contractors and how those similarly situated contractors were

treated differently"); *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1220 (10th Cir. 2011) (dismissing a class-of-one equal protection claim alleging arbitrary or improper enforcement of zoning laws, because "after *Twombly* and *Iqbal*, it is insufficient to simply allege that other, unidentified properties have 'comparable' or 'similar' conditions—the claim must be supported by specific facts plausibly suggesting the conditions on the properties and the properties themselves are similar in all material respects.")  As such, Plaintiffs have not pleaded sufficient facts to sustain an equal protection claim.

Even more fundamentally, Plaintiff also fails to allege any facts to support the notion that Defendants' disparate treatment was objectively "irrational and abusive," and "wholly unrelated to any legitimate state activity."  In fact, Defendants proffer a legitimate government interest which is rationally related to its disparate treatment: River North was a lessor to marijuana cultivators, and not only is marijuana illegal under federal law, it is also a flammable substance – and there had already been a fire on the premises.  (Doc. # 45 at 16.)  This safety and legality issue represents an objectively reasonable basis for Defendants' actions, and the Court need not inquire further as to the Defendants' subjective motives.  *See Jicarilla Apache Nation*, 440 F.3d at 1210 ("If there was an objectively reasonable basis for the Defendants' actions in this case, the district court did not err in granting summary judgment in favor of the Defendants on that ground without allowing further discovery on the question of subjective ill will"); *see also Schmidt*, 2011 WL 2967786, at *7 (dismissing a class-of-one equal protection claim because "defendants proffer a legitimate government interest rationally related to the

13

disparate treatment of marijuana growers—namely, that marijuana is illegal under federal law and only legal under state law if possession comports with narrow statutory requirements.")

In sum, Plaintiff has not pleaded sufficient facts to sustain an equal protection claim.

### 4.  Plaintiff's Contracts Clause Claim

The Contracts Clause provides, in relevant part, that "[n]o state shall enter into any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10.  To prove a violation of this constitutional provision, a plaintiff must demonstrate that a change in state law has "operated as a substantial impairment of a contractual relationship." *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992).  This inquiry has three parts: (1) whether the state law has, in fact, operated as a substantial impairment of a contractual relationship; (2) whether there is a significant and legitimate public purpose behind the legislation; and (3) whether the adjustment of the contracting parties' rights and responsibilities is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.  *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411-413 (1983).

Federal law controls whether an agreement constitutes a contract for purposes of Contract Clause analysis, although courts "'accord respectful consideration and great weight'" to state contract principles.  *General Motors Corp.,* 503 U.S. at 187.  In this case, Defendants allegedly interfered with River North's contract with its tenant, who wished to cultivate marijuana (i.e., its lease agreement).  Defendants allegedly

interfered by, for example, denying building permits, shutting off power, and revoking generator permits, which ultimately led the tenant to move out and cease paying rent. (Doc. # 39 at ¶¶ 116-18.) Of course, the benefits of this lease agreement (i.e., rent from the tenant) is inextricably linked to and contingent upon the tenant's cultivation of medical marijuana, which, as discussed above, is contraband under the CSA, 21 U.S.C. § 801 et seq. Therefore, for the purposes of Contract Clause analysis, no valid contractual relationship existed which is enforceable under federal law. *See Staffin*, 2013 WL 1896812, at *4 (dismissing Contracts Clause claim because contracts were invalid under federal law as they related to distribution or cultivation of medical marijuana); *Bollech v. Charles Cnty., Maryland*, 166 F. Supp. 2d 443, 458 (D. Md. 2001) aff'd, 69 F. App'x 178 (4th Cir. 2003) (holding that there was no Contracts Clause violation "because there was no enforceable contract to impair").

Additionally, Plaintiff has failed to demonstrate that the zoning laws were not a justifiable use of Colorado's inherent police power. Although total destruction of contractual expectations is not necessary for a finding of substantial impairment, it is axiomatic that the Contract Clause does not obliterate state police power, and "does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978) (quoting *Manigault v. Springs*, 199 U.S. 473, 480 (1905)); *see also Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 502 (1987) ("it is well settled that the prohibition against impairing the

obligation of contracts is not to be read literally. . . . its primary focus was upon legislation that was designed to repudiate or adjust pre-existing debtor-creditor relationships that obligors were unable to satisfy.")  Plaintiff merely asserts, in a single sentence, that "Defendants' actions were not taken to promote a legitimate state interest and were not done to promote the common good."  (Doc. # 39 at ¶ 123.)  However, Plaintiff fails to address the significant and legitimate public purpose identified by the Defendants for their enforcement of the zoning and building codes – namely, public safety, through fire prevention, construction requirements, and compliance with protective zoning laws and policies.[2]  (Doc. # 45 at 20.)  *See Houlton Citizens' Coal. v. Town of Houlton*, 175 F.3d 178, 191 (1st Cir. 1999) (finding an ordinance which ensured the provision of reliable collection of waste was a legitimate purpose because the health and safety of a city's residents are "two mainstays of the police power").  Additionally, the zoning laws and building codes enforced by Defendants are based upon reasonable conditions and are of a character appropriate to the public purpose justifying their adoption.

In short, Plaintiffs have failed to plead facts sufficient to state a contracts clause claim.

### 5.  Plaintiff's Pendent State Law Claims

Plaintiff's Complaint contains several state law claims.  Under 28 U.S.C. § 1367(c), "district courts may decline to exercise supplemental jurisdiction over [state law] claim[s] ... if ... the district court has dismissed all claims over which it has original

---

[2] Plaintiff's allegations that Defendants' actions were truly motivated by its desire to build a park, rather than public safety, are not substantiated.  *See supra* at 12.

jurisdiction."   Because the Court dismisses Plaintiff's federal claims, it declines to exercise jurisdiction over Plaintiff's supplemental state law claims.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that if the federal claims supporting supplemental jurisdiction are dismissed prior to trial, the state claims should be dismissed as well).[3]

### III.   CONCLUSION

Accordingly, it is hereby ORDERED that Defendant's Motion to Dismiss is GRANTED and the case is DISMISSED WITH PREJUDICE, each party to pay its own costs.

DATED:  December 30, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[3] Although the Court has discretion to retain state law claims upon the dismissal of all federal law claims, "that discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Anglemyer v. Hamilton Ctny. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995). None of these considerations weigh in favor of retaining jurisdiction here; this case is still in its infancy.